HEBER STONE ET AL. v. MARTHA P. CRENSHAW ET AL.

Decided November 12, 1902.

1.—Case Followed.

The rulings in Yeary v. Crenshaw, post, followed.

2.—Colony Grant—Transfer Before Issuance of Title.

The transfer, by a colonist, of his right to land under the laws of Coahuila and Texas, though made before the issuance of title and prohibited by then existing laws, was recognized by the Constitution and laws of the Republic, and became effective to transfer the title thereafter issued and patented by the Republic or State of Texas.

Error from the District Court of Coryell County. Tried below before Hon. W. J. Oxford.

*S. B. Hawkins,* for plaintiffs in error.

*McKinney & Hill,* for defendants in error.

FISHER, CHIEF JUSTICE.—Maggie E. Butler et al. brought this suit in trespass to try title against the plaintiff in error and others. J. K. Fluery intervened. Judgment was rendered for the plaintiffs. Defendants, the present appellants, appealed. The case was reversed as to them and affirmed as to the intervener, Fluery. Subsequently, Martha P. Crenshaw and others intervened, alleging ownership of the land. The original plaintiffs, Maggie E. Butler and others, then asked leave to dismiss their suit; and the case proceeded to trial between the plaintiffs in error and the interveners Martha P. Crenshaw et al., which resulted in a judgment for the latter.

We find the following facts: The appellees, except F. G. Robertson, are the heirs of J. W. Parker, who died in 1863. F. G. Robertson holds by proper conveyance all the interest of L. E. Parker, who was the wife

of J. W. Parker. The appellees introduced as evidence of title the following:

Interveners introduced in evidence the following certified copy with its indorsements which appeared to have been recorded in the deed records of Coryell County, the same appearing to have been originally certified from the deed records of Montgomery County, Texas:

"This witnesseth that I have this day sold to Jas. W. Parker or his legal representatives, all the donation that is now or may hereafter become due to me as a citizen of Texas, he the said ———— having paid me to my entire satisfaction for the same. The said James by himself or other representatives has full power to select, choose, survey, or locate the same whenever he or they may see proper. I do irrevocably appoint him, the said James, or his legal representatives, my true and lawful attorney in fact to transact, do and perform anything pertaining to the premises to secure the title of the said land to the said James or his representatives, be the same more or less. He or they has full power to ask and receive from any empresario or commissioner or other authorized authorities to issue land titles and receive the titles in his own proper name, and for his own proper use, and the said land empresario, commissioner or other authorities authorized to issue land titles is hereby fully authorized to issue the title in the name and for the use of said James W. Parker or his other legal representative. I hereby divest myself of any claims upon the government of Texas for the only sole use and behoof of the said James. I bind myself to continue, be and remain and perform all the necessary personal requisitions of the law, and if necessary to make any other title to the said James hereafter, I bind myself to do so for the full performance of the above. I bind myself in the full sum of ten thousand dollars.

"Given under my hand and seal the 23rd day of Aug., 1834.

his<br>
JAMES + BUTLER.<br>
mark.

"Witness: Samuel Frost, Robert Frost, Silas M. Parker, L. T. McPlumer."

Republic of Texas, Montgomery County. Recorder's Office, May 30th, 1838.—Personally appeared before me Gwyn Morrison, clerk and recorder of the county aforesaid, L. T. McPlumer, a subscribing witness to the within document, and makes oath that he saw Jas. S. Butler seal, sign and deliver the within document to James W. Parker for the purposes therein specified on the day and date thereof. Sworn and subscribed to this 30th day of May, 1838. Gwyn Morrison, Clerk and Recorder.

"Recorder's office, May 30th, 1838. Then was the foregoing instrument filed for record and recorded in Book 'B,' pages 64 and 65, on the above date of county records. Gwyn Morrison, Clk. and Recorder."

"The State of Texas, County of Montgomery. I, Appleton Gay,

county clerk of Montgomery County, and the State of Texas, do hereby certify that the above and foregoing is a full, true, and correct copy of the original taken from the records of said county in my keeping, and I further certify that the same was carefully copied by me from book 'B,' pages 64 and 65 of the said book, which is one of the books of record of said county in my keeping. Given under my hand and seal of office, this the 10th day of November, 1853. Appleton Gay, Clerk of County Court, Montgomery County, State of Texas.

"Filed for record May 6th, 1897, at 4 o'clock p. m. Recorded May 7th, 1897, at 8 o'clock a. m. P. P. West, C. C. C. C. C."

Interveners Martha P. Crenshaw et al. introduced an interlocutory judgment in this cause against the plaintiffs Maggie E. Butler, a feme sole, Addie Gray, Newton Gray, Carrie M. Butler, Wm. H. Butler, Thos. W. Butler, and Chas. H. Butler, for the land in controversy herein, and a final judgment against J. R. Fluery for the land in controversy.

Interveners then introduced the following certified copy from the General Land Office of Texas, properly certified under the hand and seal of the Commissioner of the General Land Office to be a true copy of the original and indorsement thereon on file in his office, same being the certified copy of a survey for James W. Parker, and is as follows:

"May 18th, 1838. Survey for James W. Parker, assignee of James S. Butler of six labores 795,417 square varas of land, situated on Harmon's creek, being a part of the quantity of land to which he is entitled by virtue of a certificate No. 352 issued by the Board of Land Commissioners of the County of Montgomery, beginning at the N. W. corner of Dyer Bayte's survey, a pine 24 inches in diameter (brngs); thence east with the line of said survey 2477 vrs. to the N. E. corner of said survey (brngs); thence north 1878 (brngs); thence west 1453 varas intersected the S. E. corner of McKin's survey, 2867 varas the S. W. corner of McKin's survey in Harmon's Creek; thence N. 5 2-10 varas to a post (brngs) 1417 vrs. to the N. W. corner of said survey (brngs); thence west 415 vrs. to Harmon's Creek intersected the east boundary line of J. Parker's survey (brngs); thence south with the line of J. Parker's survey 1417 varas to the S. E. corner of J. Parker's survey, 2414 vrs. intersected the northern boundary of B. Bisenhoover's survey (brngs); thence east with the line of B. Bisenhoover's survey 760 vrs. to Harmon's Creek, 1260 vrs. to the N. E. corner of said survey (brngs); thence south with the line of said survey 881 vrs. to the beginning. All the witness trees are marked thus, 'P.' There are, to the best of my knowledge and belief, three labores of arable or temporal land and three labores 795,517 square varas of pasture land in this survey. J. H. Collard, Dept. Surveyor. L. D. Nixon, L. J. McMcPlumer, chainmen."

"I certify the above field notes to be a true copy taken from my field book. J. H. Collard, Dept. Surveyor."

The above field notes are indorsed on the back:

"Walker County 50, File 286, Montgomery County first class. Field Notes. 6 795,417-1,000,000 labors. James S. Butler. File. James

Parker. Field Notes. James W. Parker. Recorded page 154-5. J. S. Butler. 6,794,417 vrs. Montgomery County."

Then follows the following certificate: "I, J. H. Collard, solemnly declare under oath of office that the foregoing survey was executed according to law and made since the first day of February last. Montgomery, August 3rd, 1838. J. H. Collard, Dept. Surveyor."

A plat of the land is accompanied with this certificate.

Interveners next introduced the following certified copy from the General Land Office of Texas, given under the hand and seal of the Commissioner of the General Land Office July 18, 1900: "I hereby certify that J. H. Collard, a deputy surveyor for the county of Montgomery County, has surveyed for me seven labours 159,237 vrs. of land, situated on Harmon's Creek adjoining Jesse Parker and Benson Bisenhoover etc. surveys, being a part of the quantity of land to which I am entitled by virtue of a certificate No. 352 issued by the Board of Land Commissioners for the county of Montgomery to me as assignee of James S. Butler for one-third of a league of land.

"Given under my hand this the 18th day of May, 1838. Jas. W. Parker, Asn. of James S. Butler. Endorsed, certificate of J. W. Parker, Montg. 1286."

Interveners next introduced a certified copy of the file wrapper of file No. 286, Montgomery, first class, in the name of James S. Butler by Assistant J. W. Parker for 6 795,417-1,000,000 labores of land in Walker County, Texas. Said file wrapper certified to be an archive of the General Land Office properly certified under the hand and seal of the Commissioner of the General Land Office, July 18th, 1900. The following indorsements are certified thereon:

"Walker Co. 56. File 286. Montgomery, First Class. James S. Butler by Ass. J. W. Parker 6 & 795,417-1,000,000 labores. Cert. not recommended. Cert. not returned. Contents: 1. Field Notes. 2. Cert. for survey. Novr. 28th, 78. Lusk."

Interveners next introduced a patent from the State of Texas, signed by the Governor November 2, 1854, properly attested by the Land Commissioner, granting to Jas. S. Butler, his heirs or assigns forever, the land in controversy in this suit, described properly by field notes, said patent reciting that it is granted by virtue of certificate No. 2631-2732 issued by the Commissioner of the General Land Office on the 11th day of December, 1852 as a duplicate.

Hill being sworn as witness for interveners testified as follows "I am acquainted with the lands in Montgomery and Walker counties and with Harmon's Creek, and with the surveys of land mentioned in the certified copy of field notes as made by J. H. Collard for Parker. Harmon's Creek is located in what was formerly Montgomery County, but is now in Walker County, Texas." Interveners also introduced in evidence the deed properly acknowledged from Mrs. L. E. Parker to F. G. Robertson conveying all her interest in the land in controversy to Robertson.

The appellants' evidence of title is as follows:

An agreement that defendants, save and except H. A. Morgan, are the heirs of J. D. Giddings, deceased. An agreement that J. D. Giddings and his legal representatives have paid taxes on the land in controversy for each year since 1868, under a claim of ownership, and that H. A. Morgan is the tenant of the other defendants and in possession. H. A. Morgan testified for the defendants, that since he has been in possession of this land sued for in this action he had put up about 200 cedar posts, worth about the sum of $30. That he had cleared out a fence row around said land and also a roadway, and had shrubbed off about six acres of land; that the value of said work was about $50. T. F. Bryan testified for defendants that on September 26, 1896, he met a stranger to him, who claimed to be G. S. Butler and to be the only child and heir of J. S. Butler, deceased; that his father J. S. Butler came to Texas prior to January 31, 1836, and died in Texas about 1852; that he, as agent for F. P. Cardwell, took a deed of conveyance from said G. S. Butler to F. P. Cardwell of the land in controversy in this case; that said G. S. Butler promised to furnish proof of his identity and heirship, which he has not done. Defendants introduced regular conveyances from F. P. Cardwell to M. L. Reel of the land in controversy. Defendants then introduced the judgment of the district court of Coryell County in cause No. 2051, wherein A. M. Giddings, D. C. Giddings, M. L. G. Stone, and Heber Stone recovered the land described in interveners' petition from M. L. Reel.

The findings of fact in cause No. 2857, J. K. P. Yeary et al. v. Martha Crenshaw et al., made by this court and this day decided, are hereby adopted and made a part of the findings in this case, on the issue of the identity of the land in controversy, as being located by the evidence of right or headright of Butler, transferred to Parker in 1834; and as to the fact that Butler, who executed that conveyance, is the same man to whom the patent was issued.

All of the questions raised in appellants' brief have been passed upon by this court in the opinion this day handed down in the case of J. K. P. Yeary et al. v. Martha Crenshaw et al., except the one as to the power and authority of Butler to execute the conveyance to Parker in 1834. In our opinion, the evidence in question is specifically definite and certain, and it is not subject to any of the objections urged against it. Under the facts of this case, the sale made by Butler to Parker was not prohibited by law and was not void. The right of a colonist under the government of Coahuila and Texas, which he sold before the organization of the Republic, but was afterwards patented and recognized by the Republic or State, is not void. Such rights were recognized under the Constitution of the Republic of Texas and by the Act of December, 1837. Babb v. Carroll, 21 Texas, 765; Moore v. Bullard, 24 Texas, 151; Lott v. King, 79 Texas, 303.

We find no error in the record and the judgment is affirmed.

*Affirmed.*